**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| BRYON FRUITS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LS CONSTRUCTION SERVICES | ) | No. 4:12-374-CV-W-DGK |
| OF KANSAS, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LS COMMERCIAL REAL ESTATE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING SUMMARY JUDGMENT

This case arises out of Plaintiff Byron Fruits employment relationship with Defendant LS Construction Services of Kansas, Inc. ("LS Construction") and an allegedly "integrated enterprise," Defendant LS Commercial Real Estate, Inc. ("LS Commercial"). The sole count in the Amended Petition (Doc. 14) alleges LS Construction terminated Plaintiff in violation of the "whistleblower" public policy exception to Missouri's at-will employment rule for complaining about workplace safety hazards.

Now before the Court is "Defendants' Motion for Summary Judgment" (Doc. 32). Finding that Plaintiff cannot establish an objectively reasonable belief that LS Construction violated a law, regulation, or clearly expressed public policy, Defendants' motion is GRANTED.

### Subject Matter Jurisdiction and Choice of Law

This case was removed from Missouri state court pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1441. There is no choice of law issue here; the parties agree Missouri law provides the applicable rule of decision.

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

## Factual Background

For purposes of summary judgment, the Court finds the facts to be as follows. Properly controverted facts, facts immaterial to the resolution of the pending motion, and argument have been omitted.

LS Construction is a construction company that develops and maintains commercial space in an underground facility known as Carefree Industrial Park ("the facility"), located in

Independence, Missouri. The facility was an active limestone quarry until approximately 1989. All remaining mining activities stopped in approximately 1994, and the facility was subsequently developed into commercial space.

LS Commercial never employed Plaintiff, but LS Construction hired Plaintiff as an at-will employee on or about August 2, 2009.[1] After Plaintiff was hired, he read LS Construction's employee handbook. The handbook included a section discussing the importance of protecting company information and an explicit ban on all recording devices in the workplace.

Paul Licausi ("Licausi") is the president and chairman of both LS Construction and LS Commercial. Thomas Sportsman ("Sportsman") worked at LC Construction as the overall construction manager until Sportsman retired in February of 2011, when Jerry DeOrnellis ("DeOrnellis") transitioned into that position.

While working at the facility, Plaintiff spent about eighty percent of his time in an area called the shale pockets ("the pockets"). Although trained as a plumber, Plaintiff's work in the pockets consisted of knocking loose rocks from the wall, draining water, cleaning up, and spraying an epoxy paint thinned with Xylene on the walls. Plaintiff worked primarily with Don Lawrence ("Lawrence"), Jesus Escalante ("Escalante"), and Vicki Cantwell ("Cantwell").[2]

LS Construction provided Plaintiff with a safety hard hat, but Plaintiff used his own hard hat because he believed it was better. LS Construction also provided Plaintiff with a rubber air-purifying respirator with two replaceable screw-on cartridge filters which he used while working

---

[1] LS Commercial uses the same employee handbook as LS Construction. The introductory page to the employee handbook states, "Welcome to LS Construction Services/LS Commercial Real Estate," and "[a]s an employee of LS Construction Services/LS Commercial Real Estate, the importance of your contribution cannot be overstated." Both Defendants use the same address for their corporate headquarters; use the same phone number; and list the same two individuals as designees to report complaints of sexual harassment.

[2] Cantwell did not work in the pockets, she worked as a spotter or observer. Her job was to ensure no one was hurt by accounting for workers entering and leaving the project area. Cantwell reported to Sportsman and, after he retired, DeOrnellis. Cantwell was not a member of management and did not have supervisory responsibilities over other LS Construction employees.

in the pockets.  Plaintiff asked for better filters for the respirator because the paint spray was going through his mask.

Plaintiff complained about conditions in the pockets.  Specifically, he complained that there was only one way to enter and exit the shale pockets.  Additionally, because there was no ventilation in the pocket, he complained about the lack of an air ventilation system.

Plaintiff spoke directly with Sportsman and DeOrnellis about these problems.  Plaintiff also complained to Cantwell about the working conditions.  Plaintiff understood that any conversations he had with Cantwell about feeling unsafe on the job would, at most, be conveyed to DeOrnellis and Sportsman.  There is evidence Licausi was aware of Plaintiff's concerns.[3]

To remedy these problems, Plaintiff asked that a second hole be cut in the floor to provide an additional exit and means of ventilation.  He also requested LS Construction bring in someone, such as workers from an adjacent cave, to explain how to work more safely in the pockets.  He also sought better equipment to cope with the paint fumes.  Plaintiff asked LS Construction's purchasing agent, Bryson Clinkinbeard, to purchase a ventilation fan with a hose for the shale pocket, cartridges for his respirators that had "something with a chemical on it" to better filter the epoxy-xylene paint he was spraying, and new gloves.  None of these requests were met.

While Plaintiff was working in the pockets he took twenty-six photographs of the conditions inside them.   At the time he took the photographs, he was working in a shale pocket where the work consisted mostly of removing falling rock, shale, and concrete.  The pocket was approximately fifteen to sixteen feet above the floor.  Plaintiff was afraid that the rocks he was dealing with would fall and take out the floor on which he was working.  He was fearful that something overhead would come loose or would fall through the floor.  Plaintiff told Cantwell,

---

[3] DeOrnellis told Lawrence two to three times that Licausi was aware of the safety concerns.

Bryson, Lawrence, and Escalante about possibly calling the Occupational Safety and Health Administration ("OSHA").

Plaintiff showed at least one of the photographs to a truck driver Plaintiff believed worked at the facility. Plaintiff acknowledges that taking the photographs violated LS Construction's policy on recording devices in the workplace.

On January 11, 2011, DeOrnellis learned Plaintiff had photographed the inside of the shale pocket and showed the photographs to at least one person. DeOrnellis called Licausi and asked Licausi how he wanted him to handle it. Although DeOrnellis had earlier received permission to terminate Lawrence and Escalante for their unwillingness to wear required safety equipment and poor work performance, DeOrnellis did not recommend Plaintiff's termination because he had "no problems" with him.

Licausi instructed DeOrnellis to terminate Plaintiff. Licausi claims the photographs show proprietary support systems and internal systems within the shale pocket that LS Construction had developed over the years and had closely guarded from disclosure to the small group of competitors in the subsurface industrial market in Kansas City.

DeOrnellis terminated Plaintiff, Lawrence, and Escalante on January 11, 2011 and January 12, 2011. After Plaintiff was terminated, he thanked Sportsman and DeOrnellis for the opportunity to work there and for the things that he learned, shook both of their hands and had no hard feelings. DeOrnellis thereafter gave Plaintiff a ride back to his truck and told Plaintiff, "man, this isn't my idea." DeOrnellis also told Plaintiff not to show anyone the pictures because LS Construction would "prosecute [Fruits] for it."

Plaintiff never reported any condition inside the shale pocket to OSHA before or after his termination. He did not show any of the 26 photographs he took to OSHA before or after his

termination, nor did he complain about any workplace conditions to OSHA before or after his termination.

Plaintiff has not retained or designated any expert witnesses to testify concerning mining, OSHA regulations, or on any other topic, and has not submitted any expert testimony for the Court to consider.

## Discussion

"The at-will employment doctrine is well-established Missouri law." *Margiotta v. Christian Hosp. Ne. Nw.,* 315 S.W.3d 342, 345 (Mo. banc. 2010). "In the absence of an employment contract with a definitive statement of duration of employment, 'an employment at will is created.'" *Frevert v. Ford Motor Co.*, 614 F.3d 466, 470-71 (8th Cir. 2010) (quoting *Margiotta*, 315 S.W.3d at 345). "An employer may terminate an at-will employee for any reason or for no reason." *Margiotta*, 315 S.W.3d at 345 (internal quotations and citations omitted). "As a matter of law, the discharged at-will employee has no cause of action for wrongful discharge." *Fleshner v. Pepose Vision Inst., P.C.,* 304 S.W.3d 81, 91 (Mo. banc. 2010).

Missouri's at-will doctrine is not absolute. *Margiotta*, 315 S.W.3d at 346. "An employer cannot terminate an at-will employee for being a member of a protected class, such as race, color, religion, national origin, sex, ancestry, age or disability." *Id.* Missouri also recognizes a public-policy exception to the at-will employment doctrine. *Id.*

> Where an employer has discharged an at-will employee because that employee refused to violate the law or any well established and clear mandate of public policy as expressed in the constitution, statutes and regulations promulgated pursuant to statute, or because the employee reported to his superiors or to public authorities serious misconduct that constitutes violations of the law and of such well established and clearly mandated public policy, the employee has a cause of action in tort for damages for wrongful discharge.

*Fleshner,* 304 S.W.3d at 91 (internal quotations, alteration, and citation omitted).  The Missouri Supreme Court has held that where a plaintiff claims that he was wrongfully discharged for "reporting violations of law or public policy," he "must show that he reported to superiors or to public authorities *serious* misconduct that constitutes a violation of the law and of *well established* and *clearly mandated* public policy."  *Margiotta,* 315 S.W.3d at 346-47.  The "wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body."  *Id.,* at 346.  In the absence of "such explicit authority, the wrongful discharge action fails as a matter of law." *Id.*

To establish wrongful discharge in violation of public policy for "whistleblowing," a plaintiff must show (1) a good-faith belief that the employer's conduct "violated a law, regulation, or some other clear statement of public policy;" (2) that the plaintiff "'blew the whistle' by reporting this violation to a superior, decisionmaker, or public authorities;" and (3) that the reporting was a "contributing factor" to the employer's decision to end the plaintiff's employment.  *Bazzi v. Tyco Healthcare Group, L.P.*, 652 F.3d 943, 947 (8th Cir. 2011). Defendants argue Plaintiff cannot establish any of these elements.

To prove the first element, a plaintiff must not only show that he had a good-faith belief that his employer was violating a statute, regulation, or public policy, but that this belief was objectively reasonable.  *Dunn v. Enter. Rent-A-Car Co.*, 170 S.W.3d 1, 7-8 (Mo. Ct. App. 2005). In the present case, Plaintiff cannot do this.

It is well-established that a "mere citation" to a regulation "without a demonstration of how the reported conduct violated it cannot form the basis for a wrongful discharge action." *Margiotta,* 315 S.W.3d at 347.  To survive a motion for summary judgment, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the

plaintiff's favor." *Bazzi*, 652 F.3d at 948 (quoting *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010)). Although Plaintiff has identified two OSHA regulations he believes Defendants may have violated, 29 U.S.C. § 1910.134(d)(1)(i) and 29 U.S.C. § 1926.501(c), he has failed to put any evidence on the record demonstrating an objectively reasonable belief that Defendants violated either regulation.

The first regulation, 29 U.S.C. § 1910.134(d)(1)(i), which governs selection of respirators, states: "The employer shall select and provide an appropriate respirator based on the respiratory hazard(s) to which the worker is exposed and workplace and user factors that affect respirator performance and reliability." While there is evidence that paint got through Plaintiff's respirator mask, this is not res ipsa proof that LS Construction violated any regulations. The Eighth Circuit Court of Appeals has indicated that to establish the kind of regulatory violation alleged in this case the plaintiff needs expert testimony. *See Bazzi,* 652 F.3d at 948 (affirming summary judgment in employer's favor, suggesting some form of expert testimony needed to show how the employer's actions did or did not violate a Food and Drug Act regulation). Without expert testimony, a jury would have no way of knowing what workplace and user factors affect a respirator's performance and reliability or how to evaluate a respirator to determine if it was appropriate. *See id.* (affirming grant of summary judgment where the plaintiff had "failed to submit even a scintilla" of expert evidence). Here there is no testimony from an engineer, industry personnel, or other expert showing that the respirator provided to Plaintiff was not appropriate for use in spraying a mixture of epoxy paint and Xylene in an unventilated environment. Consequently, Plaintiff does not have sufficient evidence to establish an objectively reasonable belief that Defendants violated 29 U.S.C. § 1910.134(d)(1)(i).

Plaintiff has similarly failed to establish an objectively reasonable belief that Defendants may have violated 29 U.S.C. § 1926.501(c), which regulates protection from falling objects. Section § 1926.501(c) provides:

> When an employee is exposed to falling objects, the employer shall have each employee wear a hard hat and shall implement one of the following measures:
>
> (c)(1) Erect toeboards, screens, or guardrail systems to prevent objects from falling from higher levels; or,
>
> (c)(2) Erect a canopy structure and keep potential fall objects far enough from the edge of the higher level so that those objects would not go over the edge if they were accidentally displaced; or,
>
> (c)(3) Barricade the area to which objects could fall, prohibit employees from entering the barricaded area, and keep objects that may fall far enough away from the edge of a higher level so that those objects would not go over the edge if they were accidentally displaced.

The record here demonstrates Plaintiff was exposed to falling objects and was wearing a hard hat, but it is silent as to whether LS Construction implemented one of the three additional safety measures, namely erecting: (1) a toeboard, screen, or guardrail system; (2) a canopy structure; or (3) a barricade. Without proving LS Construction failed to implement any of these safety measures (or some other set of facts establishing an objectively reasonable belief that LS Construction violated the regulation), Plaintiff cannot carry his burden of proof with respect to the first element of his claim, and Defendants are entitled to summary judgment.

Because this finding is dispositive, there is no need to address Defendants' remaining arguments.

## Conclusion

For the reasons discussed above, the Court finds Defendants are entitled to summary judgment on Plaintiff's sole cause of action. Defendants' motion for summary judgment (Doc. 32) is GRANTED.

**IT IS SO ORDERED.**

Date:  July 12, 2013                    /s/ Greg Kays
                                        GREG KAYS, JUDGE
                                        UNITED STATES DISTRICT COURT